The STATE of Texas, Appellant,

v.

Wesley WELTON, Appellee.

Nos. 3–88–214–CR to 3–88–216–CR.

Court of Appeals of Texas,
Austin.

June 21, 1989.
Discretionary Review Refused
Oct. 25, 1989.

Ken Oden, County Atty., Alia Moses, Asst. County Atty., for appellant.

Leon J. Grizzard, Austin, for appellee.

Before POWERS, GAMMAGE and CARROLL, JJ.

POWERS, Justice.

In three misdemeanor prosecutions initiated by separate informations, the State charged that Wesley William Welton unlawfully carried a weapon, drove an automobile while intoxicated, and possessed a controlled substance. Welton moved in each case, before trial, to suppress evidence discovered by a police officer in his warrantless roadside search of an automobile driven by Welton, ostensibly authorized by Welton's contemporaneous arrest for driving while intoxicated. After an evidentiary hearing, the court found a want of probable cause for an arrest on that ground, and ordered the evidence suppressed. The State takes this interlocutory appeal under the provisions of Tex.Code Cr.P.Ann. art. 44.01(a)(5) (Supp.1989). We will reverse the order and remand the cause to the trial court.

## THE CONTROVERSY

The arresting officer Love gave the only testimony in the probable-cause hearing. We shall summarize it.

At about 2:00 p.m. on the day in question, Love's radar device gauged Welton's speed at about 66 m.p.h. as he drove his automobile toward Love on a rural road where the speed limit was 55 m.p.h. At Love's signal, Welton brought his car to a stop on the shoulder of the road. Welton got out of the automobile promptly, and hurried to meet Love near the rear of the car. Love told Welton he had been stopped for speeding, and asked to see his operator's license. Welton replied that he knew he had been speeding, and took his license from his wallet. He said, in addition, that the car belonged to his girlfriend whom he was motoring to see.

As Love talked to Welton, he immediately smelled "a strong odor of alcohol on [Welton's] breath." When asked about the odor, Welton replied "that he had had a couple of drinks," that one of them had been a Budweiser, and "that he was not drunk." Welton "displayed signs of unusual or a little bit out of the ordinary nervousness type actions," showing more nervousness than was ordinary in a person stopped for a traffic offense—he wanted "to smoke continuously." Welton's speech "was slurred ... sort of a cotton mouthed, dry type slur," but Love could understand it. Love did not know whether that was Welton's normal speech, because the two had never met before. Welton was "somewhat unsteady on his feet," in the sense that "[h]e was shifting his weight back and forth" as Love talked to him. Love noticed no "problems" with the way Welton walked from the door to the rear of his car, after parking it on the shoulder, although Love's report (which was not introduced in evidence) indicated that Welton had "in somewhat of a hurried type fashion ... walked quickly to the rear of the vehicle."

Because of the odor of alcohol on Welton's breath, coupled with his "unsteadiness," Love asked Welton "if he would submit to some sobriety tests." When Welton consented, Love "gave him a horizontal gaze nystagmus test." ("Nystagmus" means a rapid involuntary movement of the eyeballs.) In that connection, Love asked Welton to remove his eyeglasses then to follow with his eyes alone the movement of Love's writing pen as he moved it from side to side. Ordinarily, a person's eyes will move "smoothly" in following the pen, but in Welton's case "[t]here was an extreme lack of smooth pursuit," indicating that Welton "was not able to maintain concentration or complete concentration on the pen at all times...." His eyes would "jump instead of smoothly following the pen." According to Love's teaching "at the academy," the jumping of Welton's eyes in that manner, while he followed the pen, indicated intoxication because "only central nervous system depressants [such as alcohol] will affect or enhance horizontal gaze nystagmus" to the degree indicated in Welton's case, and near or far-sightedness will not.

Officer Love then determined to arrest Welton for driving while intoxicated, but he did not immediately inform Welton of that intention. He asked Welton for permission to search the automobile he had been driving, which Welton refused on the ground that he did not own the car. Love told Welton that he might give such consent, if he wished, because he was the driver. Welton again refused. (Love wished to search the car because he "had a strong feeling there was something else involved, and if there was something in the vehicle, [he] wanted to know about it.") Love then informed Welton he was under arrest for driving while intoxicated, and searched the automobile to discover ultimately the incriminating evidence Welton moved to suppress.

The State contends on appeal that Love's testimony, being the only evidence given in the hearing, was sufficient to warrant a reasonable and prudent person's belief that Welton was intoxicated, as opposed to a mere hunch or suspicion in that regard. *Johnson v. State*, 722 S.W.2d 417, 419 (Tex. Cr.App.1986). Consequently, "probable cause" existed for Welton's roadside arrest

and the subsequent search of the automobile.

### DISCUSSION AND HOLDINGS

"Any one who has had an opportunity to observe the acts or conduct of a person on a particular occasion may state whether he was drunk or sober." 2 Ray, Texas Law of Evidence § 1430, at 91 (3rd ed. 1980). The court receives such *opinion* testimony in evidence because of the difficulty in communicating to the fact finder, with any accuracy and intelligibility, the facts themselves as they describe the demeanor or behavior of the intoxicated person. *Id.,* § 1397, at 13–17; 3 Torcia, Wharton's Criminal Evidence § 568 (14th ed. 1987); *see generally Kendrick v. State,* 156 Tex. Crim. 97, 238 S.W.2d 964, 965 (1951). The testimony of lay witnesses is limited, in this respect, "to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." Tex.R. Crim.Evid.Ann. 701 (Pamp.1989). To demonstrate a rational basis for his opinion, the witness often relates in evidence the observations from which his opinion or inference was drawn; for example, the defendant's slurred speech, bloodshot eyes, the odor of alcohol on his person, unsteady balance, a staggered gait, or the odor of alcohol on his breath. *See Cotton v. State,* 686 S.W.2d 140, 142 n. 3 (Tex.Cr.App.1985). (The list is not exclusive, and witnesses often relate in evidence their observation of the defendant's performance of various "sobriety tests," such as standing on one foot, walking a line, and so forth.) But such observations do not themselves constitute evidence of intoxication; they only show that the opinion rests upon a rational basis. 2 Ray, Texas Law of Evidence, *supra,* § 1396, at 11–13.

█ In addition to giving his opinion that Welton was intoxicated, Officer Love articulated several observations upon which that opinion was based: (1) the odor of alcohol on Welton's breath; (2) his admission that he had consumed two "drinks"; (3) his nervousness, which exceeded somewhat that of the ordinary person stopped for a traffic violation; (4) his shifting his weight back and forth as he talked to Love, which Love referred to several times as an "unsteadiness"; (5) Welton's manner of speech, which was "dry" and "cotton mouthed" but understandable; and (6) the jerky movement of his eyes as he attempted to follow the point of Love's pen, which, based on Love's training "at the academy," indicated probable intoxication by a central-nervous-system depressant such as alcohol.

Welton argues, and the trial court evidently agreed, that factors (1) through (5) were insufficient standing alone to furnish a rational basis for Love's opinion that Welton was intoxicated, which deprived Love's *opinion* of *all* probative force. And, while (6) might have augmented sufficiently the basis for Love's opinion, it could not have that effect here because there was no expert testimony which tended to show that the *particular manner* in which Love administered the so-called "test" was accepted, in a relevant scientific community, as a reliable indicator of intoxication. (Welton concedes the validity of the scientific principle underlying the "test"—that alcohol affects the eyes through the central nervous system, causing them to "jump" in certain circumstances.)

We believe (1) through (5) demonstrated a rational basis for Love's opinion that Welton was intoxicated. *Cf. Day v. State,* 474 S.W.2d 246 (Tex.Cr.App.1971) (in probation-revocation proceeding, officers' opinion that defendant "was very intoxicated," based on their observation of his erratic driving and "strong odor of alcohol on his breath," sufficient to prove fact that defendant drove while intoxicated). While items (4) and (5) are not the exact equivalents of the "unsteady balance" and "slurred speech" expressions in the *Cotton* footnote, they were circumstances that Love plainly considered remarkable and indicative of intoxication when orchestrated with Welton's admission that he had consumed two "drinks," the odor of alcohol on his breath, and his apparently excessive nervousness. *See Nichols v. State,* 504 S.W.2d 462, 463 (Tex.Cr.App.1974) (defendant

"very unsteady on his feet" because he "swayed from one foot to the other").

We reach with some hesitation our conclusion, as to the sufficiency of Love's testimony, based solely on items (1) through (5). We are mindful of the trial judge's favored position in observing the demeanor of the only witness who testified, and in hearing firsthand his testimony. The trial judge undoubtedly occupied a better position to determine exactly the force, meaning, and effect of Love's testimony. On the other hand, Love's testimony was the only evidence before the court on the issue of probable cause, nothing in the record casts any doubt on his testimony, and we cannot be unmindful that it is "virtually impossible to verbalize" the various aspects of Welton's behavior which caused Love to infer that he was intoxicated. 3 Torcia, Wharton's Criminal Evidence, *supra*, at 327. We note as well that Love also testified that he believed Welton to be intoxicated "almost immediately upon talking to him." On balance, we must conclude that Love's explicit, clear, and uncontradicted opinion testimony established probable cause for Welton's arrest because items (1) through (5) alone demonstrated a rational basis for that opinion.

■ If we are mistaken in the foregoing, however, we believe item (6) placed the issue beyond reasonable dispute when orchestrated with items (1) through (5). In our view, Love's observations in connection with the so-called "test" might rationally be considered by him in arriving at a decision whether to arrest Welton for driving while intoxicated. We do not mean, of course, that those observations would necessarily be admissible at trial as evidence of intoxication. *See Howard v. State,* 744 S.W.2d 640 (Tex.App.1987, no pet.). We simply hold that Love was entitled to rely on his official training in that respect in reaching a decision whether to arrest Welton for the non-speeding offense. *Gonzales v. State,* 648 S.W.2d 684, 687 (Tex.Cr. App.1983) (in determining whether object is contraband subject to seizure, officer may rely on his training and knowledge, wheth-

er gained by personal experience in the field, formal training, or on-the-job training under more experienced officers). The trial judge stated that he *believed* Love's testimony that, *based upon his training,* Welton failed the "test."

We therefore reverse the order suppressing the evidence, and remand the cause to the trial court.