**Opinion issued March 28, 2019**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-18-00443-CR

—————————————

**SLOBODAN VIDAKOVIC, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 297th District Court**
**Tarrant County,[1] Texas**
**Trial Court Case No. 1514836R**

---

1      The Texas Supreme Court transferred this appeal from the Court of Appeals for the Second District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

**MEMORANDUM OPINION**

A jury convicted Slobodan Vidakovic of the offenses of theft of an elderly individual and exploitation of an elderly individual and assessed his punishment at five years' confinement.[2] On appeal, Vidakovic challenges the trial court's admission of opinion testimony regarding the complainant's mental capacity. We affirm.

**Background**

The complainant in this case was Stuart Lee, a retiree who lived independently at the time of the alleged offenses but now is deceased. Although Lee lived alone, his home was near and he regularly checked in with his son, John. According to John, Lee was a man of routine who lived frugally in retirement and was careful to pay his bills on time, which is why John was surprised to learn in May or June 2016 that Lee's water had been turned off and that Lee had not eaten in a week. John took a close look at Lee's finances and discovered not only that one of Lee's cars had been repossessed but also that Lee had not paid his property taxes and was delinquent on other accounts. John was especially concerned when he discovered that Lee had

---

[2]    *See* TEX. PENAL CODE § 31.03(a) (defining theft as unlawful appropriation of property with intent to deprive owner of property); *Id.* § 31.03(f)(3)(A) (stating that offense of theft is enhanced if it is shown that owner of property appropriated was elderly individual); *Id.* § 32.53(b)–(c) (stating that person commits third-degree felony offense if he intentionally, knowingly, or recklessly causes exploitation of elderly individual); *see also id.* § 22.04(c)(2) (defining "elderly individual" as "a person 65 years of age or older").

written checks to Vidakovic, one of Lee's neighbors, totaling more than $41,000. The checks to Vidakovic were issued over the course of about two years, beginning in 2014.

John confronted Vidakovic, demanding the return of Lee's money. Vidakovic responded that Lee was a friend, the money was a loan, and the matter did not concern John. Suspecting theft, John contacted police, and an investigation ensued. The investigation revealed that Vidakovic asked Lee to fund various projects and business ventures between January 2014 and May 2016. Although he promised to repay Lee with substantial interest or to make Lee his business partner, Vidakovic did not fulfill his promises.

A grand jury returned a two-count indictment against Lee for theft and exploitation of an elderly individual. The indictment alleged that Vidakovic, through "one scheme or continuing course of conduct," had unlawfully appropriated Lee's property "by acquiring or exercising control over" Lee's money, the aggregate value of which was between $30,000 and $150,000, and that Lee was an elderly and disabled individual.

At trial, the State made the case that Vidakovic had defrauded Lee by taking advantage of Lee's age and diminishing mental capacity. The State presented testimony from seven witnesses in support of its allegations. The witnesses included (1) John, who testified about Lee's financial condition and deteriorating mental

3

health (including his diagnosis of Alzheimer's disease and vascular dementia before his death); (2) Officer J. Byford, a neighborhood patrol officer who was acquainted with Lee and responded to John's initial call for police assistance upon discovering Lee's payments to Vidakovic; (3) Dr. C. A. Hopewell, a clinical neuropsychologist who examined Lee in September 2017 and observed signs of dementia and severely impaired cognitive function; (4) J. Petkovich, Vidakovic's former business partner who identified Vidakovic's email address and signature on several of the State's exhibits; (5) Detective C. Smith, who investigated the theft; and two investigators from the Tarrant County District Attorney's Office, (6) R. Bonham, an expert in elder financial fraud, and (7) H. Nguyen, a computer and digital media forensic examiner.

Relevant for the purposes of this appeal is the testimony of Officer Byford and Dr. Hopewell, who both gave opinions on which the State relied to support its allegation that Lee was disabled due to a diminished mental capacity. Officer Byford testified that he is a 21-year veteran of the Fort Worth Police Department. In his assignment as a neighborhood patrol officer, Officer Byford works closely with citizens on quality of life issues. Because Lee and Vidakovic lived in his patrol area, Officer Byford knew both men. Officer Byford estimated that he had known Lee for more than 12 years and testified that, during that time, he had interacted with Lee a "couple of times a month probably, minimum, maybe more than that." He described

Lee, during their earlier encounters, as a "very sharp, very outgoing, friendly guy" who took care of himself and his home.

Officer Byford explained that, over the course of about two years, he observed a decline in Lee's mental health. He described the change as gradual at first but became more drastic:

> As [Lee] got older, I mean, he seemed like he was not quite as sharp as he was when I first met him, mainly during the last few months leading up to this. I mean, I noticed . . . he would become confused a little bit in our conversations, didn't have quite as much to tell me about the neighborhood. Our conversations usually revolved around one or two very specific things and didn't extend beyond that.

Lee also forgot Officer Byford's name, fell behind in keeping up his home, and neglected his personal appearance. As told by Officer Byford, Lee was "definitely getting thinner, getting a bit more frail looking. His – I wouldn't say his personal hygiene, but his dress just wasn't [what] . . . I'm used to seeing him in, you know."

Officer Byford also told the jury about his law enforcement training related to mental health, including identifying persons with diminished capacity and intervening in mental health crises. He responded affirmatively when asked whether, based on his training, he believed Lee had a diminished capacity at the time Vidakovic committed theft. He also testified that the changes he perceived in Lee would be obvious to someone who interacted with Lee on a regular basis. Much of

5

Officer Byford's testimony about Lee's mental capacity was unobjected-to by Vidakovic.[3]

The second witness to offer an opinion on Lee's mental capacity was Dr. Hopewell, whom the trial court qualified as an expert and whose clinical neuropsychology practice includes geriatric mental health. Dr. Hopewell regularly examines patients like Lee to determine what, if any, services they may require because of cognitive difficulties. Dr. Hopewell testified that he evaluated Lee's cognitive function in September 2017, pursuant to a request from the director of a nursing home where Lee was admitted. Dr. Hopewell explained that his evaluation included tests designed to assess "memory, thinking, the ability to make decisions, the ability to interact appropriate[ly] with other people, [and] the ability to control your emotions." Lee could not complete most of Dr. Hopewell's testing because he "was functioning at such a low level."

---

[3]     Although he filed a motion in limine requesting that the State approach the bench and demonstrate Officer Byford's expert qualifications before asking Officer Byford to opine on Lee's mental capacity (which motion the trial court overruled), Vidakovic did not object when the State inquired whether Officer Byford believed Lee's mental capacity was diminished. Vidakovic did object to (1) hearsay as to the testimony that Lee struggled to remember Officer Byford's name; (2) relevance and speculation as to Officer Byford's testimony about the period of time during which Lee suffered from diminished capacity;  and (3) speculation as to Officer Byford's statement that someone who "had coffee with Mr. Lee four or five times a week" would have made the same observations. But Vidakovic never objected that these opinions were expert opinions that Officer Byford was unqualified to give or that were unreliable.

Based on Lee's performance, Dr. Hopewell found that (1) Lee's short-term memory was "extremely impaired"; (2) Lee's long-term memory also "was very, very low"; (3) Lee's overall cognitive function was in the "moderately severe, severely impaired range"; and (4) Lee suffered from symptoms of dementia. Dr. Hopewell recommended to the nursing home director that Lee required assisted living and a guardianship of his financial and medical affairs.

In response to questioning by the State, Dr. Hopewell agreed that a patient's inability to manage his finances or home could be a sign of dementia, as could be a patient's inability to remember the name of a person with whom he is familiar or fixation on certain topics. But on cross-examination, Dr. Hopewell made clear that he was not offering any opinion regarding Lee's cognitive abilities before the date of his September 2017 examination. Defense counsel asked Dr. Hopewell, "[I]s it possible for you to go back in time into January 2014 and give an opinion regarding [Lee's] mental state from 2014 until June of 2016," which is roughly the time of the theft alleged in the indictment. Dr. Hopewell responded that a look back in time was possible but not using the tests he administered to Lee. According to Dr. Hopewell, additional forensic neuropsychological testing would have been required. Because Dr. Hopewell had not performed a forensic neuropsychological examination of Lee, defense counsel confirmed the limited scope of Dr. Hopewell's opinion in the following exchange:

Q. Okay. And so in your opinion, can you give, in any way, a reliable opinion about the mental state of Stuart Lee in 2014?

A. In 2014? No.

Q. Okay. In you opinion, can you give a reliable opinion in terms of the mental state of Stuart Lee in 2015?

A. No.

Q. Can you give a reliable opinion of – as to the mental state of Stuart Lee in 2016?

A. No.

In closing argument, both the State and defense counsel addressed the testimony on Lee's mental capacity. The State aimed to persuade the jury that Vidakovic's crime was especially troubling given Lee's age and inability "to understand the desperate situation he was in because of [his] disease." The State urged the jury to disregard any argument that Lee had the capacity to understand Vidakovic's actions because, even if the jury could not be certain of the extent of the diminishment of Lee's mental capacity, it was clear that Lee "wasn't all the way there." Defense counsel, in turn, devoted a substantial portion of his closing argument to clarifying the testimony about Lee's mental capacity, reminding the jury that the "timeframe we're talking about here is 2014 to 2016" and that Dr. Hopewell had not spoken to Lee's mental state during that period of time.

The jury deliberated and ultimately convicted Vidakovic of both offenses alleged in the indictment, and Vidakovic was sentenced to five years' confinement. Vidakovic appealed.

## Opinion Testimony

In a single issue, Vidakovic contends the trial court erred by admitting opinion testimony from Officer Byford and Dr. Hopewell that Lee's mental capacity was diminished during the period of time in which the theft occurred. According to Vidakovic, Officer Byford's and Dr. Hopewell's opinions are expert opinions that do not satisfy the standard for admissibility under Rule of Evidence 702.

### A. Standard of review and governing law

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *Gibbs v. State*, 555 S.W.3d 718, 730 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A trial court abuses its discretion only when the court's decision was so clearly wrong as to lie outside the zone of reasonable disagreement. *Beham*, 559 S.W.3d at 478; *Gibbs*, 555 S.W.3d at 730.

Vidakovic's appeal concerns opinion testimony. How the challenged witness testimony in analyzed depends on whether the witnesses offered lay opinion testimony or expert opinion testimony. *See Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) ("Both lay and expert witnesses can offer opinion

9

testimony."). Rule 701 allows lay opinions of "the more traditional witness—one who 'witnessed' or participated in the events about which he or she is testifying—while Rule 702 allows for a witness who was brought in as an expert to testify." *Id.* Under Rule 701, a lay witness may testify in the form of an opinion that is (a) rationally based on the witness's perception and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact issue. TEX. R. EVID. 701. Under Rule 702, an expert witness may testify in the form of an opinion if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue" and the witness is qualified as an expert by "knowledge, skill, experience, training, or education." TEX. R. EVID. 702.

Certain opinion testimony may qualify for admission under both Rule 701 and Rule 702. When a witness who is qualified as an expert testifies about events which he or she personally perceived, the testimony may be admissible as both Rule 701 lay opinion testimony and Rule 702 expert opinion testimony. *See Osbourn*, 92 S.W.3d at 536. That is, a person with specialized knowledge may testify about his or her own observations under Rule 701 and may also testify about the theories, facts, and data used in his or her area of expertise under Rule 702. *See*, *e.g.*, *id.* at 538 (holding police officer's testimony that he smelled marijuana was admissible under Rule 701 as lay opinion); *Harnett v. State*, 38 S.W.3d 650, 659 (Tex. App.—

10

Austin 2000, pet. ref'd) (social worker permitted to testify under Rule 701 based on her personal observations of appellant and under Rule 702 based on her training and experience); *Ventroy v. State*, 917 S.W.2d 419, 422 (Tex. App.—San Antonio 1996, pet. ref'd) (police officer permitted to testify under Rules 701 and 702 based on his experience and personal knowledge of accident scene).

But not all observations by witnesses with experience and training are admissible as lay opinions. *See Osbourn*, 92 S.W.3d at 537; *see also Emerson v. State*, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994) (en banc) (declining to admit officer's testimony about appellant's intoxication as lay opinion because officer's opinion was based on observations while administering Horizontal Gaze Nystagmus test). The general rule is that "observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness has experience or training." *Osbourn,* 92 S.W.3d at 537.

To provide lay opinion testimony under Rule 701, the witness must have had some relevant perception. *See id.* at 535. Rule 701's requirement that a lay opinion be "rationally based on the perception of the witness" has two elements. *Harnett*, 38 S.W.3d at 657–58 (citing 2A Steven Goode, Olin Guy Wellborn, III & M. Michael Sharlot, *Courtroom Handbook on Texas Evidence*, ch. 5, art. VII, at 413 (Texas Practice 2000)). The first element is personal knowledge gained by perception,

including what the witness saw, heard, smelled, tasted, touched, or felt. *Id.* at 658 (citing *Bigby v. State,* 892 S.W.2d 864, 889 (Tex. Crim. App. 1994)). The second element is the opinion must be one that a reasonable person could draw from the underlying facts. *Id.* (citing *Fairow v. State,* 943 S.W.2d 895, 900 (Tex. Crim. App. 1997)). Not all witnesses who provide opinion testimony are experts. "It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert." *Osbourn*, 92 S.W.3d at 537.

## B.  Opinion testimony of Officer Byford

Appellant contends that Officer Byford's opinion that Lee's mental capacity diminished over a period of about two years should have been excluded under Rule 702 because (1) the State did not establish Officer Byford's qualification to give an expert opinion on mental capacity and (2) Officer Byford's opinion was not supported by any scientific analysis and thus was not reliable or helpful. The State responds that Officer Byford's opinion was not expert testimony but instead was a lay opinion admissible under Rule 701.[4] We agree with the State.

---

[4]  The State also argues that this issue has been waived because Vidakovic did not object to Officer Byford's opinion at trial. *Cf.* TEX. R. APP. P. 33.1(a) (stating that timely objections and rulings are required to present complaint on appeal); *Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003) (stating that denial of motion in limine is preliminary ruling that normally does not preserve error for appeal). We do not address the State's waiver argument because we conclude that Vidakovic's challenge is not sustainable on the merits even if preserved.

Although the record does not indicate whether Office Byford would have qualified as an expert based on his training related to mental health, that is not the relevant inquiry because Officer Byford was not testifying as an expert when he expressed his opinion that Lee's mental capacity was diminished. *See Osbourn*, 92 S.W.3d at 536 ("[A]lthough police officers have training and experience, they are not precluded from offering lay testimony regarding events which they have personally observed."); *see also Williams v. State*, 191 S.W.3d 242, 254 (Tex. App.—Austin 2006, no pet.) (on-duty patrol officer's designation as "mental health officer" after attending 40-hour course on mental health did not require that his testimony about his perceptions be admissible only as expert testimony under Rule 702); *State v. Welton*, 774 S.W.2d 341, 343 (Tex. App.—Austin 1989, pet. ref'd) (police officer permitted to give lay opinion on intoxication based, in part, on smelling odor of alcohol). Officer Byford's testimony was not scientific or technical in nature. Rather his opinions and inferences were based on impressions and conclusions he derived from what he saw and heard in his frequent interactions with Lee as a patrol officer over the course of more than a decade. Officer Byford explained that when the two men first met, Lee was engaged, intellectually sharp, and diligent in maintaining his yard and personal appearance. But Officer Byford had perceived changes in recent years based on his observations that Lee sometimes forgot Officer Byford's name, became confused in conversation or fixated on certain

13

subjects, and no longer kept up his yard or personal appearance in the same manner. These changes, according to Officer Byford, would have been obvious to anyone who interacted with Lee on a regular basis. In other words, Officer Byford's opinion that Lee exhibited a diminished mental capacity was one that a reasonable person could draw from observing Lee as Officer Byford had. *See Osbourn*, 92 S.W.3d at 538–39. And Officer Byford's opinion going to Lee's mental capacity during the time of the theft aided the determination of fact issues, including whether Vidakovic exploited Lee. *See* TEX. PENAL CODE § 32.53(a)(2) (defining criminal offense of exploitation to include "the illegal or improper use of . . . [an] elderly individual . . . or of the resources of . . . [an] elderly individual . . . for monetary or personal benefit, profit, or gain").

Accordingly, we conclude that the trial court did not abuse its discretion because Officer Byford's opinion testimony was admissible under Rule 701.

## C. Opinion testimony of Dr. Hopewell

Vidakovic also challenges the testimony of Dr. Hopewell, a clinical neuropsychologist who opined that Lee exhibited symptoms of moderately severe dementia and severely impaired cognitive function in September 2017. Although he acknowledges that Dr. Hopewell was "unquestionably an expert" in the field of psychology, Vidakovic asserts that Dr. Hopewell's testimony should have been excluded nonetheless because it could not reliably opine that Lee's mental capacity

14

was diminished during the years in which the theft occurred, from 2014 to 2016. Nowhere in the record, however, did Dr. Hopewell give the opinion about which Vidakovic complains. To the contrary, Dr. Hopewell specifically testified that he could not reliably offer an opinion on Lee's mental capacity at any time other than in September 2017, when he examined Lee. Dr. Hopewell made clear that a look back in time to determine Lee's mental capacity from 2014 to 2016 required additional testing that he had not administered to Lee. So he declined to offer any such opinion. Indeed, the limited scope of Dr. Hopewell's opinion was the subject of vigorous cross-examination by Lee's counsel, which emphasized for the jury that Dr. Hopewell was not offering an opinion as to Lee's mental capacity during the timeframe alleged in the indictment. We cannot hold that the trial court abused its discretion by admitting an expert opinion that was never admitted.

## Conclusion

For all these reasons, we overrule Vidakovic's sole issue on appeal. We affirm the judgment of the trial court.


Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Higley, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).

15