

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

## No. 07-20-00095-CR

_____


**COURTNEY DOBBINS, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**


On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2019-416,791; Honorable Jim Bob Darnell, Presiding


June 18, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Courtney Dobbins, appeals from his conviction by jury of the second degree felony offense of aggravated assault,[1] with a deadly weapon finding, enhanced by a prior felony conviction, and the resulting sentence of imprisonment for a term of

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2020).

twenty-seven years and the imposition of a fine of $10,000.[2]  Appellant challenges his conviction and sentence through five issues alleging the trial court erred by (1) admitting an exhibit that purported to show he sought to influence the testimony of the alleged victim, (2) finding forfeiture by wrongdoing pursuant to article 38.49 of the Texas Code of Criminal Procedure, (3) admitting lay testimony regarding whether the victim's injuries were self-inflicted, (4) admitting lay testimony regarding the distance between the shooter and the victim, and (5) the cumulative effect of the errors complained of in issues 1 through 4 rendered his trial fundamentally unfair.  Based on the reasons set forth below, we will affirm the judgment of the trial court.

### BACKGROUND

Appellant does not challenge the sufficiency of the evidence to support his conviction. Therefore, we will set forth only those facts necessary to a disposition of Appellant's issues.  TEX. R. APP. P. 47.1.

Appellant was charged via indictment with the aggravated assault of his girlfriend, Alexa Hernandez.  He pleaded "not guilty" and the matter was tried before a jury.  Through the testimony of several witnesses, the State introduced evidence that Appellant and Alexa had an argument during which the two struggled over a gun.  Alexa suffered a gunshot wound to her neck and back[3] and went to a local hospital for treatment.  She also suffered other injuries that appeared to be related to a physical altercation.

---

[2] TEX. PENAL CODE ANN. § 12.42(b) (West 2020).  When enhanced by a prior felony conviction, an offense which is "punished as" a higher offense only raises the level of punishment and not the degree of the offense.  *See Oliva v. State*, 548 S.W.3d 518, 526-27 (Tex. Crim. App. 2018).

[3] Testimony indicated the bullet entered Alexa's shoulder line at the base of her neck and exited out the middle of her back.

2

Several witnesses testified that Alexa told them Appellant had shot her. A recording of a 911 call was also introduced during which Alexa is heard stating the same. However, prior to trial, Alexa signed an affidavit of non-prosecution and during her trial testimony, she stated she shot herself. Despite this testimony, at the close of the evidence, the jury found Appellant guilty as charged in the indictment and sentenced him as noted after a punishment hearing.

### ANALYSIS

### ISSUE ONE—ADMISSION OF LETTER OVER APPELLANT'S RULE 404(B) OBJECTION

Through his first issue, Appellant argues the trial court erred when it admitted a letter purportedly written by Appellant to Alexa. The letter was found among his belongings in his jail cell and an employee of the jail testified the letter was never sent. Alexa denied receiving such a letter. Consequently, Appellant argues, the trial court should not have admitted it and in doing so, harmed him.

During Alexa's trial testimony, the prosecutor asked her about a jail phone call with Appellant during which he told Alexa she should not testify in court. The prosecutor later asked Alexa, during cross-examination, about a letter from Appellant that said, "No witness, no case." It appeared to encourage her to assert her Fifth Amendment privilege. Alexa said she did not receive a letter like this. She testified at length until, after being confronted with the jail phone call, she decided to assert her privilege under the Fifth Amendment to the United States Constitution.

A deputy at the detention center where Appellant was held testified she searched Appellant's cell on January 30, 2020. She said she found items in a manila envelope and

3

authenticated the letter from Appellant. The State offered it as Exhibit S99. The trial court admitted it over Appellant's Rule 404(b) objection and others. The letter was published and read to the jury by the deputy. The deputy also testified the letter was never sent. During closing, the State referenced this letter when it said, "He was writing her in January. 'Deny I did anything to you. Plead the 5th.' That's what she did. She followed instructions." Appellant argues the admission of this letter was erroneous and harmed him.

We review a trial court's decision to admit evidence under Rule 404(b) for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* (citation omitted). If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision. *Id.* at 344.

Rule 404(b) expressly provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of the defendant to show he acted in conformity therewith. Rule 404(b) codifies the common law principle that a defendant should be tried only for the offense for which he is charged and not for being a criminal generally. *Rogers v. State*, 853 S.W.2d 29, 32 n.3 (Tex. Crim. App. 1993). *See Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) (explaining that the defendant is generally to be tried only for the offense charged, not for any other crimes).

But, extraneous offense evidence may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b). The list of examples in Rule 404(b) is non-

4

exhaustive. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). The trial court's Rule 404(b) ruling admitting evidence is generally within the zone of reasonable disagreement "if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Texas courts utilize a two-step analysis for determining the admissibility of extraneous offenses or uncharged acts. *Rogers*, 853 S.W.2d at 32-33. Courts determine first whether the evidence is relevant to a material issue in the case and second whether the relevant evidence should be admitted as an exception to Rule 404(b). *Id.*

Appellant argues that because the letter found in his cell was never sent, he has not committed any kind of completed extraneous bad act or crime to which Rule 404(b) would apply. Rather, he asserts, this matter is analogous to the circumstances in *Castillo v. State*, 59 S.W.3d 357, 361 (Tex. App.—Dallas 2001, pet. ref'd), wherein the court stated that statements concerning a defendant's thoughts of wrongdoing are "merely inchoate thoughts" and, therefore do not implicate Rule 404(b). Appellant points out that the Court of Criminal Appeals made a similar finding in *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993).

Appellant complains on appeal only of the trial court's ruling on the basis of Rule 404(b). The State contends that, if the letter did not constitute a bad act because it was unsent, it is thus not excludable under Rule 404(b). And, as also noted by both the State and Appellant, the cases relied on by Appellant conclude that thoughts or statements are not conduct and therefore, do not implicate Rule 404(b). *See Moreno*, 858 S.W.2d at 453; *Castillo*, 59 S.W.3d at 361. Therefore, because Rule 404(b) would be inapplicable

5

to Appellant's written statements reflecting only his thoughts, the trial court did not err in overruling his objection on that ground.

Even if Appellant's written statements were subject to a Rule 404(b) objection, such evidence would still be admissible for purposes of showing Appellant's motive, intent, preparation, or plan to tamper with the testimony of the key witness against him. Moreover, even if we were to construe Appellant's objection as a more general Rule 403 objection, we would still find the letter was both relevant and admissible as a written statement by a party opponent. TEX. R. EVID. 801(e)(2). Accordingly, we overrule Appellant's first issue.

### ISSUE TWO—ADMISSION OF TESTIMONIAL STATEMENTS BY ALEXA FOLLOWING A FINDING OF FORFEITURE BY WRONGDOING PURSUANT TO ARTICLE 38.49

Through his second issue, Appellant contends the trial court erred when it made a finding of "forfeiture by wrongdoing" under article 38.49 of the Code of Criminal Procedure, thereby allowing into evidence several harmful inculpatory testimonial statements by Alexa.

Article 38.49 of the Code of Criminal Procedure provides:

**(a)** A party to a criminal case who wrongfully procures the unavailability of a witness or prospective witness:

> **(1)** may not benefit from the wrongdoing by depriving the trier of fact of relevant evidence and testimony; and

> **(2)** forfeits the party's right to object to the admissibility of evidence or statements based on the unavailability of the witness as provided by this article through forfeiture by wrongdoing.

6

**(b)** Evidence and statements related to a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of a witness or prospective witness are admissible and may be used by the offering party to make a showing of forfeiture by wrongdoing under this article, subject to Subsection (c).

**(c)** In determining the admissibility of the evidence or statements described by Subsection (b), the court shall determine, out of the presence of the jury, whether forfeiture by wrongdoing occurred by a preponderance of the evidence. If practicable, the court shall make the determination under this subsection before trial using the procedures under Article 28.01 of this code and Rule 104, Texas Rules of Evidence.

**(d)** The party offering the evidence or statements described by Subsection (b) is not required to show that:

**(1)** the actor's sole intent was to wrongfully cause the witness's or prospective witness's unavailability;

**(2)** the actions of the actor constituted a criminal offense; or

**(3)** any statements offered are reliable.

**(e)** A conviction for an offense under Section 36.05 or 36.06(a), Penal Code, creates a presumption of forfeiture by wrongdoing under this article.

**(f)** Rule 403, Texas Rules of Evidence, applies to this article. This article does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law.

TEX. CODE CRIM. PROC. ANN. art. 38.49 (West 2015).

As noted in our analysis of Appellant's first issue, we review a trial court's decision to admit or exclude evidence based on an abuse of discretion standard. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). We utilize the same standard in the forfeiture by wrongdoing context. *Shepherd v. State*, 489 S.W.3d 559, 573 (Tex. App.—Texarkana 2016, pet. ref'd). Article 38.49 requires the trial court to make a determination, outside the presence of the jury "whether forfeiture by wrongdoing occurred by a preponderance

7

of the evidence." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.49(c)). The statute also provides that the evidence to be considered by the trial court in its determination of forfeiture by wrongdoing is "[e]vidence and statements related to a party that has engaged or acquiesced in wrongdoing that was *intended* to, and did, procure the unavailability of a witness or prospective witness." *Shepherd*, 489 S.W.3d at 573-74 (citing TEX. CODE CRIM. PROC. ANN. art. 38.49(b) (emphasis in original)). In addition, article 38.49 provides that the party offering the evidence is not required to show that the wrongdoer's "sole intent was to wrongfully cause the witness's or prospective witness's unavailability." *Shepherd*, 489 S.W.3d at 574 (citing TEX. CODE CRIM. PROC. ANN. art. 38.49(d)(1)).

During the presentation of its case-in-chief, the State called Detective Brandon Smith to provide testimony regarding statements made to him by Alexa. The court held a hearing outside the presence of the jury prior to allowing the statements into evidence. During that hearing, the prosecutor told the court that the combination of admitted jail phone calls, the letters from Appellant encouraging Alexa to "plead the Fifth," including the unsent letter, and Alexa's behavior in the courtroom indicated "forfeiture by wrongdoing" because it showed Appellant wrongfully procured Alexa's testimony or threatened her availability to testify. Accordingly, the State argued, it was permitted to elicit testimony from Detective Smith regarding Alexa's statements to him. The court made the requested finding and permitted the testimony.

Defense counsel objected, arguing that because the State knew Alexa intended to assert her Fifth Amendment rights, a hearing should have been held prior to her presentation as a witness. The defense also objected on the basis of article 38.49(f), arguing that Texas Rule of Evidence 403 applies to article 38.49 and that the provision

8

does not permit the presentation of character evidence that would otherwise be inadmissible under the Rules of Evidence. The court overruled the objections except as it pertained to character evidence.

Detective Smith testified that Alexa told him that Appellant shot her. She said they argued, and Appellant hit her in the face. She ran to the bedroom and he followed. He tried to hit her, but she dodged and he pulled out a gun. He then put it down and got on the bed to attempt to hit or kick her. He picked up the gun again, ejected the magazine, and pointed the gun at her. She "flinched" and turned away. Appellant pulled the trigger and Alexa realized she had been shot. She, her children, and Appellant walked to her mother's house. Alexa went to the hospital for treatment, but Appellant left. On appeal, Appellant points out that Alexa's statements to Detective Smith contradicted Alexa's own trial testimony during which she said she and Appellant argued but that she shot herself.

Appellant asserts that article 38.49 limits the conditions under which a trial court may make a finding of forfeiture by wrongdoing to situations in which a party actually wrongfully procures the unavailability of a witness. Here, Appellant argues, Alexa testified at length. Indeed, her testimony spanned some fifty-three pages of the reporter's record. While the State argued that Appellant tried to make Alexa unavailable as a witness by telling her in a jail call, "Like in the letter I told you. No witness, no case" and in encouraging her to "plead the Fifth," and that Alexa seemed amenable to the idea and did eventually assert that right, Alexa testified at trial that Appellant told her to come to trial. She also denied getting a letter that said "No witness, no case." Also, a jail employee testified the letter recovered from Appellant's cell was never sent. Further, Appellant argues the court's own comment to Alexa the day after she testified that "You sure like to

9

lie a lot," while off the record and outside the presence of the jury, likely led her to assert her Fifth Amendment rights. As such, Appellant asserts, the trial court should not have made a finding of forfeiture by wrongdoing and should not have permitted Detective Smith's testimony about Alexa's statements to him. Rather, Alexa's statements should only have been admitted under Rule 613 as impeachment evidence and not as substantive evidence. *See* TEX. R. EVID. 613.

We disagree. A witness may be made "unavailable" under many circumstances[4] and the mere fact that Alexa offered some testimony does not render the trial court's finding under article 38.49 erroneous. The record shows, and the State points out, that Alexa was a hostile witness from the outset of her testimony and clearly did not wish to testify. She had signed an affidavit of non-prosecution prior to trial and appeared to resent being called into court to testify against Appellant. During her testimony on direct examination, she often said she could not remember even basic facts. She claimed she managed to shoot herself in the back of her neck and claimed she lied to her mother, medical personnel, and police officers when she told them Appellant shot her simply because she was mad at him.

When Alexa was confronted during trial with a jail phone call between herself and Appellant after she had testified he had not told her to refuse to testify, she asserted her Fifth Amendment rights. Alexa refused to testify further. During a hearing outside the presence of the jury, the State urged the court to make a finding of forfeiture by wrongdoing by a preponderance of the evidence. It asked the court to consider the

---

[4] *See* TEX. R. EVID. 804 (setting forth criteria under which a witness may be considered unavailable).

evidence it had heard, including the jail phone calls urging Alexa not to come to court, the unsent letter from Appellant to Alexa saying, "[n]o witness, no case" and telling her to plead the Fifth, and Alexa's behavior in the courtroom. The State told the court it wanted to further examine Alexa and to discuss her statements as substantive evidence. The court ruled, stating "[b]ased on what the Court has previously heard, the Court makes such a finding."

The record shows the trial court had before it evidence from which it could have concluded Appellant procured Alexa's unavailability as a witness. Alexa was confronted with Appellant's instruction that she not testify and that she plead the Fifth. Once she was confronted with that evidence, she refused to testify further and the State was unable to examine her regarding the statements she made identifying Appellant as the person who shot her and describing what occurred. Appellant cannot benefit from the success of his attempts to keep Alexa from fully testifying, particularly since the testimony she refused to give went directly to the offense for which he was charged.

Further, even if the trial court erred in making its ruling on this point, any error was harmless. Improper admission of evidence is non-constitutional error that we disregard unless the error affects an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). Under Rule 44.2(b), "an appellate court may not reverse for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict." *Garcia*, 126 S.W.3d at 927. It is well-settled that "[a]n error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim.

11

App. 2004) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection."). Here, the record shows other witnesses testified that Alexa told them Appellant shot her. One of those witnesses included Detective Smith whom Alexa spoke with a day or two after the shooting. He told the jury Alexa told him details of the struggle and argument between Appellant and Alexa and that he shot her. Alexa made similar admissible statements to another officer and to medical personnel. We thus find any error in the trial court's finding of forfeiture by wrongdoing harmless. *Lane*, 151 S.W.3d at 193. We overrule Appellant's second issue.

### ISSUE THREE—ADMISSION OF OFFICER'S TESTIMONY CONCERNING WHETHER WOUND WAS SELF-INFLICTED

In his third issue, Appellant argues the trial court erred by admitting, over his objection, the lay testimony of a police officer regarding whether Alexa's wound was self-inflicted because that testimony was properly a subject for an expert witness, not lay testimony.

At trial, Officer Kenny Rodriguez testified that while he was not a gunshot wound expert, he had seen self-inflicted wounds, and in his opinion, Alexa's gunshot wound did not appear to be self-inflicted. He reached this conclusion because he did not see powder burns on her wound. During cross-examination, Rodriguez admitted he took only a short look at the wound and did not test for any type of residue.

The admissibility of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex.

12

Crim. App. 2001). An abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

Witnesses who are not experts may testify about opinions or inferences, but only when those opinions or inferences are rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. TEX. R. EVID. 701. An expert witness may offer an opinion if he is qualified by his knowledge, skill, experience, training, or education to do so and if scientific, technical, or specialized knowledge will assist the trier of fact in understanding the evidence or to determining a fact in issue. TEX. R. EVID. 702. Although police officers have training and experience, they are not precluded from offering lay testimony regarding events which they have personally observed. *Osbourn*, 92 S.W.3d at 536 (citing *Reece v. State*, 878 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (police officer testified that, in his opinion, based on his experience, the actions he observed were consistent with someone selling drugs); *State v. Welton*, 774 S.W.2d 341, 343 (Tex. App.—Austin 1989, pet. ref'd) (police officer permitted to testify as non-expert opinion witness regarding intoxication based in part on smelling the odor of alcohol)).

Here, the officer testified the wound he observed was not consistent with a self-inflicted gunshot wound. The officer testified only to his own observation of Alexa's gunshot wound and his observation was something that would help the jury determine whether Alexa's wound was from her shooting herself or from Appellant shooting her. Thus, the trial court could have determined it was proper lay testimony under Rule 701.

Furthermore, even in the event the trial court's ruling was erroneous, any such error was harmless because other witnesses testified similarly. *Lane*, 151 S.W.3d at 193. One of those witnesses, a physician, testified that in her twenty-eight years of experience, she had not seen a self-inflicted gunshot at the trajectory with which Alexa presented. She said self-inflicted gunshot wounds are "typically in the arms and legs, occasionally in the abdomen." She opined that Alexa's wound was "in keeping with what [Alexa] told us when she arrived, which was that her boyfriend beat and shot her." We note also the admission without objection of Appellant's own interview with Detective Smith during which he admitted his hand was on the gun when Alexa was shot. And, medical documentation admitted into evidence included statements from Alexa saying Appellant shot her. Consequently, we resolve Appellant's third issue against him.

### ISSUE FOUR—ADMISSION OF EMS TECHNICIAN'S TESTIMONY REGARDING DISTANCE BETWEEN SHOOTER AND VICTIM

Via his fourth issue, Appellant asserts the trial court erred by admitting the lay testimony of an EMS technician regarding the distance from which Alexa was shot because that testimony was a subject requiring expert testimony, not lay testimony.

Micah Stone, an EMS technician treated Alexa the night she was shot. He testified he looked at the wound and did not see any powder burns on her injury. The prosecutor asked him, "[i]n your training and experience, do you have a rough idea of how far away a firearm needs to be in order for there to not leave a powder burn?" Over Appellant's objection, Stone answered, "It would depend on the type of firearm it is, a small caliber handgun would have to be at least within three feet."

14

As we noted in our analysis of Appellant's third issue, the admissibility of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *Powell*, 63 S.W.3d at 438. An abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery*, 810 S.W.2d at 380.

Similar to our discussion in the analysis of Appellant's third issue regarding the police officer's testimony based on his observations, Stone's testimony was also based on his own personal observation of Alexa's gunshot wound and was also admitted to assist the jury in determining whether Alexa could have shot herself or whether Appellant was the person who shot her. Thus, the trial court could have determined this testimony was also proper lay testimony.

Additionally, as was also the case with the police officer's testimony, any error here was harmless in light of the significant evidence presented showing Alexa's gunshot would was not self-inflicted. The physician, police officer, and detective all testified that Alexa's gunshot wound did not appear to be self-inflicted because of either the trajectory and location of the wound or the lack of powder burns on her. And, as previously discussed, during his interview with Detective Smith, Appellant admitted he had the gun in his hand. Further, many witnesses testified to Alexa's statements after the shooting that Appellant was the one who shot her. Medical documentation supported those statements. As such, any error in admitting Stone's testimony on this issue was harmless. We overrule Appellant's fourth issue.

**ISSUE FIVE—CUMULATIVE ERROR**

In Appellant's fifth and last issue, he contends the "collective effect of these four errors rendered the trial fundamentally unfair." As such, he argues, reversal and remand is required.

"The doctrine of cumulative error provides that the cumulative effect of several errors can, in the aggregate, constitute reversible error, even though no single instance of error would" standing alone amount to reversible error. *Stokes v. State*, No. 05-18-00571-CR, 2019 Tex. App. LEXIS 5236, at *2-3 (Tex. App.—Dallas June 24, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *Holloway v. State*, No. 05-14-01244-CR, 2016 Tex. App. LEXIS 5546 (Tex. App.—Dallas May 25, 2016, no pet.) (mem. op., not designated for publication); *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("It is conceivable that a number of errors may be found harmful in their cumulative effect.")). In a cumulative error analysis, we consider only those errors that were preserved for appeal. *Stokes,* 2019 Tex. App. LEXIS 5236, at *3 (citation omitted). The cumulative-error doctrine does not apply unless the complained-of errors have been preserved for appeal and are actually errors. *Id.* (citing *Chamberlain*, 998 S.W.2d at 238 ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error."). There is no cumulative harm when an appellant fails to prove any error as to his complaints separately. *Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016) (citing *Hughes v. State*, 24 S.W.3d 833, 844 (Tex. Crim. App. 2000)).

Because we have found no error under each of Appellant's preceding four issues, having considered their cumulative effect on the overall outcome of Appellant's trial, we

16

decline to find cumulative error or harm therefrom in this case. Accordingly, we overrule Appellant's fifth issue.

### CONCLUSION

Having resolved each of Appellant's issues against him, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

Do not publish.